**ELDER, DEMPSTER & CO., Limited, v. WELD–NEVILLE COTTON CO., Inc.*** (No. 186–3230.)

(Commission of Appeals of Texas, Section B. June 1, 1921.)

**1. Trial ⚙️404(1)—Findings should be given construction which supports judgment.**

The entire findings of the trial court should be read together and construed as a whole, and when they permit of more than one reasonable construction, that construction should be adopted which will support the judgment.

**2. Shipping ⚙️108—Finding against general custom fixing density of cotton held not to conflict with finding of density after proper baling.**

In an action for breach of a contract for the shipment of high density Webb cotton, a finding by the trial court that there was no general custom fixing the weight of a bale of such cotton is not in conflict with a finding that a bale of cotton properly compressed by the Webb process would weigh more than the average weight of the bales furnished for shipment, and that plaintiff thereby breached his contract.

**3. Shipping ⚙️108—Contract for shipment of compressed cotton implies it is to be compressed in workmanlike manner.**

A contract for the shipment of a specified number of bales of high density Webb cotton implies that the cotton is to be compressed by the Webb process in a workmanlike manner.

**4. Pleading ⚙️433(3)—Pleadings not specially excepted to held to support judgment on finding cotton was not compressed in workmanlike manner.**

A petition for damages for breach of contract to ship a specified number of bales of high density Webb compressed cotton, which disclosed that the theory of recovery was that the specified cotton should have a higher density than that furnished for shipment, so that the cotton shipped occupied more space than the same weight of properly compressed cotton should have, is sufficient, in the absence of a special exception, to support recovery on the finding that the cotton was not compressed in

---

⚙️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied June 23, 1921.

a workmanlike manner, as impliedly required by the contract.

**5. Shipping 108 — Provisions relating to standard cotton held applicable to high density cotton, except as to weight.**

Where a contract for the shipment of high density cotton was upon a printed form for the shipment of standard cotton, a provision on the back of the form covering the payment of additional freight if the cotton did not conform to the weight stated for standard cotton is applicable to the shipment of high density cotton, except as to the provision stating the weight.

**6. Shipping 108—Proof additional cargo was available unnecessary to recovery for shipment of cotton not properly compressed.**

In an action for breach of a contract for shipment of high density Webb compressed cotton, where the breach alleged was the shipment of cotton less dense than the minimum density of the specified cotton properly compressed, so that the cargo occupied more space than was paid for at the rate per 100 pounds established for cotton of that grade properly compressed, the shipowner can recover for the additional space occupied without proof that other cargo was available for the ship, which would be necessary to recover for a shortage in the quantity of cargo furnished.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Elder Dempster & Co., Limited, against Weld-Neville Cotton Company, Incorporated, to recover damages for breach of two contracts. A judgment for plaintiff was reversed by the Court of Civil Appeals, and the cause remanded for retrial (204 S. W. 678), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Edward F. Harris and Harris & Harris, all of Galveston, for plaintiff in error.

C. C. McRae and Baker, Botts, Parker & Garwood, all of Houston, for defendant in error.

McCLENDON, P. J. Elder Dempster Steamship Company, Limited, brought this action against Weld-Neville Cotton Company, Incorporated, to recover damages for alleged breach of two contracts by which the latter agreed to deliver to the former two 1,000-bale consignments of "high density Webb" compressed cotton, to be transported by the steamship company from Galveston, Tex., to Havre, France, at the rate of $2.95 per hundred weight. The alleged breach of contract consisted in the contention that the cotton actually delivered had a less minimum density than it should have had, in order to constitute compliance with the contract; whereby it occupied, to the extent of its lack of density below the required minimum, proportionately greater volume of ship space. The case was tried before the trial judge,

without a jury, and judgment was rendered for plaintiff, based upon the findings that the actual density of the cotton delivered was 31 pounds per cubic foot, when it should have had a minimum density of 32 pounds per cubic foot; recovery being awarded for the additional ship space at the rate arrived at by applying the contract rate per hundred weight to the required minimum density. The judgment was reversed by the Court of Civil Appeals (204 S. W. 678), and the cause remanded for retrial.

The question of leading importance, and the one upon which the reversal was predicated, is whether the trial court's findings of fact will support recovery. So much of those findings as bear upon this issue are as follows:

"4. There was in January, 1916, no trade usage at Houston, Galveston, or Texas City fixing a specific number of pounds to the cubic foot as the minimum 'density' of the cotton contracted for. The trade usages, as far as affect the controversy at the three points were the same. Webb high density cotton presses were only established at Houston and Galveston in 1913–14. The shipment of such cotton was increased largely since the beginning of the European war, on account of the demand for tonnage and the higher prices for cubic space on ocean carrying vessels.

"5. The ship agents had endeavored to fix a minimum density of 34 pounds, but did not live up to it themselves, and the attempt even was not generally known to cotton exporters, such as the defendant in this case, who had neither knowledge or notice of it. Exporters generally at the time regarded any cotton turned out by Webb high density presses in shipshape, or in workmanlike manner, as compliance with contracts such as sued on, and knew of no different contention.

"6. Ship agents, more or less generally, stipulated in contracts such as those sued on the minimum density required in the particular transaction, varying from 32 to 34 pounds. Some would have accepted cotton as low as 30 pounds density, as in compliance with such contracts.

"7. My conclusion is that cotton turned out by a Webb high density press in a workmanlike manner should have had a minimum average density of 32 pounds to the cubic foot.

"8. The cotton furnished by the defendant had gone through a Webb high density press, but it had not all been compressed in a workmanlike manner. Its average density was 31 pounds.

"Law.

"In the absence of a usage of trade as to what constituted Webb high density cotton at the time of the making of these contracts, the true measure of plaintiff's right and of the defendant's liability is for cotton turned out by Webb high density presses in a workmanlike manner."

As found by the Court of Civil Appeals, these findings are amply supported by pleading and proof. The conclusion reached by

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

'that court, as given in the syllabus of the published opinion, follows:

"Where steamship owners sued cotton shippers because cotton shipped was not 'Webb high density cotton' 'as agreed, and took up too much room, they could not recover when 'court found that cotton turned out by Webb 'high density presses in workmanlike manner, without reference to density, was generally regarded as compliance with contract calling for such cotton, notwithstanding further finding that such cotton should have specified average minimum density."

[1] It is a general rule that applies to findings of the trial court that the entire findings should be read together and construed as a whole, and that when they permit of more than one reasonable construction that construction should be adopted which will support the action of the court as expressed in the judgment rendered upon the findings.

[2] Applying this rule, we see no irreconcilable conflict in the several findings. The seventh and eighth findings are clearly to the effect that the cotton contracted for, "high density Webb," when compressed in a workmanlike manner, should have a minimum density of 32 pounds per cubic foot; that the cotton delivered was not compressed in a workmanlike manner, and had a density of only 31 pounds per cubic foot. These findings we think sufficient to support the alleged breach of contract.

[3] In the absence of any pertinent stipulation in the contract, the law would imply that cotton compressed in a workmanlike manner was intended. A failure to furnish cotton so compressed would constitute a breach of the contract. The fact that there was no generally recognized trade custom requiring any specified minimum density for "high density Webb" cotton does not militate against this conclusion. The contract rate was based upon weight, and the evidence showed that ocean freight rates are based upon volume of ship space. Under these circumstances the contract warranted the implication, even in the absence of such custom, that the cotton should have the minimum density of "high density Webb" cotton compressed in a workmanlike manner.

[4] It is also urged that this theory of recovery is not supported by the pleadings, in that the latter—

"did not apprise appellant of a claim to be made that the cotton was not pressed in a workmanlike manner; but of a claim that, regardless of care in pressing it, the cotton should have been of a density of not less than 34 pounds to the cubic foot; and, as it was upon the former ground, and not the latter, that the judgment was rendered, it is erroneous."

The pleadings clearly show that the entire theory of recovery was that "High Density Webb" cotton should have a minimum density greater than that of the cotton delivered. In the absence of a special exception calling for more specific allegation, it was not requisite that the pleadings should show by what particular defect, or from what particular cause, the cotton fell short in the density which the term used in the contract was alleged to imply.

Error is also assigned upon rendering judgment for plaintiff upon the ground that no damage for breach of contract in the particular alleged was proved. This assignment is predicated upon the proposition that the only proper measure of damages was the amount of freight plaintiff would have received by filling the excess space occupied by the cotton, and since there was no showing that plaintiff, but for the breach of contract, could have filled this space with other cargo, no damage was shown.

[5] Plaintiff contends, on the other hand, that, by express stipulation, the contracts provide for the measure of recovery applied by the trial court. The contracts were identical, and were upon regular printed forms for shipment of "standard" compressed cotton. On the face of the contracts, the word "standard" was erased, and "high density Webb" substituted. Upon the back of the contracts was the following stipulation:

"Every compressed bale shall contain a minimum density of 22½ pounds per cubic foot when delivered at vessel's loading berth, and any bale containing less density shall be rejected; but the ship agent may, at his option, accept any bales containing less density than 22½ pounds, in which event the ship agent shall (provided such can be done without delay to the steamer and the required minimum density be secured) compress for shipper's account, at a cost not exceeding the price any available compress in Texas City will compress the bale for, or accept it in the condition tendered, *charging the shipper extra freight proportionately for the additional space occupied,* but not less than fifty cents (50¢) per bale. The certificate of the Texas City Maritime Exchange as to density shall be conclusive proof, and govern under this rule, and copy thereof shall be sent to the shipper." (Italics ours).

Under the uncontradicted evidence, the minimum density provided for in this stipulation applied only to "standard" compressed cotton, and could have no application to "high density" cotton, the density of which was invariably from 9 to 12 or more pounds greater than that of "standard." The relative contentions of the parties with reference to this stipulation are these: Defendant contends that, as no interlineation was made therein, either the entire stipulation must be rejected as having reference only to "standard," and not "high density" cotton, or the minimum density therein given for "standard" cotton.must be applied. Plaintiff contends that only those portions of the stipulation which are clearly not applicable to

"high density" cotton should be rejected, leaving intact that portion of the stipulation in italics. We are inclined to accede to the correctness of the latter interpretation, especially in view of the fact that the evidence supports the allegations of the petition that ocean freight rates on cotton, by whatever method compressed, were based upon density —the greater the density, the lower the rate.

[6] But, independently of this stipulation, we do not think the court applied an improper method of computing the damage. The general rule is that, where the contract affords a means of computing damages for its breach, it is not improper to apply the measure of compensation thus provided. Had there been a failure to furnish the amount of freight provided in the contract, the rule contended for by the defendant might apply. But here there was a greater amount of freight tendered and carried than contracted for; that is, the freight tendered, by reason of its lack of density below the required minimum, occupied more space in the ship than if it had been of the minimum required density. We see no objection to requiring defendant to pay for this additional space at the contract rate for the smallest amount of cotton by weight of the required minimum density necessary to fill it.

The other errors assigned are, we think, without merit, and not of sufficient importance to require discussion.

We conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.