**BOUNDS v. MAGNOLIA PETROLEUM CO.**
**(No. 604.)**

Court of Civil Appeals of Texas. Waco.
Dec. 8, 1927.

**1. Trial ⬤➛365(2) — Entire findings of trial court must be read and construed as whole.**

Entire findings of trial court must be read and construed as a whole.

**2. Trial ⬤➛365(1)—Where trial court's findings permit more than one reasonable construction, construction supporting judgment will be adopted.**

Where trial court's findings permit more than one. reasonable construction, that construction which will support the judgment rendered will be adopted.

**3. Appeal and error ⬤➛1071(1)—Where mind of court. acted on specific question in assessing damages, it was immaterial that measure of damages applied was not clearly expressed or defined.**

Where it was reasonably certain that mind of court, in assessing damages, acted on specific question of amount of damage suffered by reason of destruction of plaintiff's springs and inconvenience resulting from destruction of crossing or ford of creek, it was immaterial that measure of damages applied by court may not have been clearly expressed and defined by him with legal exactitude.

**4. Waters and water courses ⬤➛76—Damages awarded for salt water and oil emptied into creek held not shown to be inadequate.**

Where owner sued to recover for damage to land sustained by emptying salt water and oil into creek flowing through his land, plaintiff's contention that damages awarded were inadequate was not supported by evidence.

Error from District Court, Limestone County; W. R. Boyd, Judge.

Action by M. S. Bounds against the Magnolia Petroleum Company. Judgment for plaintiff, and plaintiff brings error. Affirmed.

Williford & Geppert, of Teague, for plaintiff in error.

W. H. Francis, A. S. Hardwicke, and Wallace Hawkins, all of Dallas, for defendant in error.

GALLAGHER, C. J. Plaintiff in error, M. S. Bounds, instituted this suit in the district court against defendant in error, Magnolia Petroleum Company, to recover damages to certain lands owned by him, which, he alleged, resulted in part from the unlawful acts of said company. The parties will be designated as in the trial court. Plaintiff alleged that he owned three certain contiguous tracts of land, containing 94 acres, 92 acres, and 20 acres, respectively; that Tehuacana creek extended through the first two tracts, and that a drain emptying into said creek extended through the third tract; that said creek

at times overflowed its banks and flooded lands on both sides thereof; that certain fresh-water springs were located in the bed of said creek, and that the same furnished ample water for his stock; that said lands were used for pasturage and agricultural purposes; that defendant had for two years preceding operated certain oil wells above said lands; that defendant permitted large quantities of salt water, waste oil, and refuse from said wells to flow continuously into said creek and its tributaries and through the same over and across his said lands. He further alleged that the continuous flow of said salt water, waste oil, and refuse down said creek divided his first two tracts of land into two parcels and caused great inconvenience in the use thereof; that the same permanently damaged and destroyed said fresh-water springs on said tracts of land and that they did not contain any other such springs; that the same in high water and overflow had destroyed the grass and trees on said tracts and permanently rendered unfit for cultivation about 8 acres of land in said first tract and 11½ acres of land in said second tract along the banks of said creek; that the said salt water, waste oil and refuse permanently destroyed the vegetation and permanently rendered unfit for cultivation about 1½ acres along said drain in said third tract. Plaintiff alleged that said first tract had been permanently damaged in the sum of $2,000, said second tract in the sum of $2,080, and said third tract in the sum of $800; that said damage resulted from separate and independent torts on the part of defendant and the Gulf Production Company, and that the acts of the defendant caused and that the defendant was responsible to him for two-fifths of the damage so alleged, for which he sued.

The case was tried by the court without a jury. The court found and recited in his judgment that plaintiff had been inconvenienced and damaged in crossing Tehuacana creek by reason of the continuous flow of salt water down the same, and that one or more of his fresh-water springs in the bed of said creek had been destroyed thereby, and that plaintiff had been damaged by reason thereof in the sum of $200, for which sum recovery was awarded. The court further found and recited in said judgment that said lands had not been permanently injured or damaged by reason of the things alleged in plaintiff's petition, and ordered that plaintiff recover nothing for injury or damage thereto other than as thereinbefore awarded. Said judgment is presented for review.

### Opinion.

Plaintiff by his first proposition presented as ground for reversal contends that since the fresh-water springs in the bed of Tehuacana creek constituted a part of the realty, the

---

⬤➛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

proper measure of plaintiff's damage was the value of said tracts of land immediately before and immediately after the destruction of said springs by the acts of defendant and others in turning salt water into said creek. Plaintiff by his second and last proposition presented as ground for reversal contends that the damages awarded by the court are inadequate. These propositions are so closely related that they may well be considered together.

The brief statement of the plaintiff's pleadings hereinbefore set out shows that plaintiff complained of the destruction of his crossing or ford on said creek, the destruction of his fresh-water springs in the bed thereof, and the destruction of grass, vegetation, and timber on and injury to some 21 acres of land overflowed in high water by said creek and its tributaries, which injuries, he alleged, rendered said land permanently unfit for cultivation. He alleged his damages on each tract in gross. He introduced evidence tending to show that he sustained the injuries and damages so complained of. He testified on the trial that the difference in value of each of said tracts immediately prior to and immediately after the damages complained of was $25 per acre. Another witness testified that such difference in value was $75 per acre. No witness testified with reference to the injury or damage to the value of said tracts of land as a whole by reason of the destruction of said crossing or said springs. Neither was there any testimony of injury or damage sustained by plaintiff by reason of such destruction alone. The testimony as a whole is sufficient to sustain the court in holding that the only injury or damage to plaintiff's lands was such as resulted from the destruction of his crossing and his fresh-water springs. We will therefore confine our recitals of the evidence to these issues. The evidence shows and the court found that Tehuacana creek extends through plaintiff's first and second tracts above described a distance of approximately 1 mile; that said creek is on an average 30 feet deep and about 50 feet wide, with very steep or abrupt banks; that prior to the acts complained of said creek had a dry bed for at least two-thirds of the time; that there was one good fresh-water spring and two smaller springs, all in the bed of said creek on said lands; that plaintiff used the larger spring for stock water and other uses; that he cultivated land on both sides of said creek and had small pastures on each side thereof; that he maintained one ford or crossing on said creek in passing from one field to another with wagon and farming implements; that he kept a few cattle in the pastures on said land and when his water tanks dried up his cattle watered at said larger spring; that defendant and others permit oil and salt water to escape and run down said creek through plaintiff's lands; that salt water flows continuously down the channel of said creek in a stream about 5 inches deep and 4 or 5 feet in width, and has caused the bed of the creek to become boggy to the extent that he is unable to cross said creek with a wagon and farming implements, requiring him to drive some distance to a bridge in order to cross from one side of his farm to the other, and resulting in some inconvenience; that by reason of said flow of salt water his said springs of fresh water have become polluted and unfit for use and probably permanently destroyed. The court further found that the value of the use of such crossing for convenient passage from one side of the farm to the other and the value of the use of such springs was not shown by the evidence.

[1, 2] Plaintiff contends in argument that inasmuch as the court found, as recited in the judgment, that plaintiff's lands had not been permanently injured or damaged and that the value of the use of said crossing and said springs had not been shown, the court did not consider said springs a part of the realty and was of the opinion that evidence of decrease in value of said lands resulting from their destruction was not the proper measure of the damage recoverable therefor. We do not think plaintiff properly construes such findings. The entire findings of the trial court must be read and construed as a whole. When such findings permit more than one reasonable construction, that construction which will support the judgment rendered will be adopted. Elder, Dempster & Co. v. Weld-Neville Cotton Co. (Tex. Com. App.) 231 S. W. 102, 104; Daniels v. Wight (Tex. Com. App.) 249 S. W. 454, 455, 456, pars. 1, 3; Compania Bancaria y de Inversiones v. Border Nat. Bank (Tex. Civ. App.) 265 S. W. 599, 601, pars. 1, 2, 3.

[3] We think it reasonably appears that, when the court found that plaintiff's lands had not been permanently injured or damaged, he used the term "lands" in a popular sense and with regard to that portion thereof used for pasturage and agricultural purposes, as distinguished from the bed of the creek where said springs were situated. We further think that, when the court found that the value of said springs was not shown, he meant that there was no specific evidence of the decrease in value of said lands as a whole by reason of the destruction of said springs, as distinguished from evidence of decrease in value of the same as a whole by reason of injury to and destruction of grass, vegetation, and trees and injury and damage to certain portions of said land, rendering such portions permanently unfit for cultivation, all of which latter damages the court found plaintiff had not suffered. Plaintiff cannot justly complain that he failed to make his evidence of decrease in value fit every phase of the case. The right of the court to award some damages is not questioned, and the defendant is not

complaining of the judgment therefor rendered against it. That the mind of the court in assessing damages acted on the specific question of the amount of damage suffered by reason of the destruction of said springs and the inconvenience resulting from the destruction of said crossing is reasonably certain. It is therefore immaterial that the measure of damages applied by the court may not have been clearly expressed and defined by him with legal exactitude. Daniels v. Wight, supra, pp. 455, 456, par. 2; City of Graham v. Moseley (Tex. Civ. App.) 254 S. W. 130, 132, 133, par. 5.

[4] We do not think that plaintiff's contention that the damages awarded are inadequate is sustained by the record with sufficient certainty to authorize a reversal. Plaintiff in his petition alleged that the damages suffered by him resulted from the separate and independent acts of the defendant and another, and that the acts of defendant caused only two-fifths of the entire damage so suffered. He sued defendant for only two-fifths of such damage. There is evidence in the record which would justify a finding that defendant was responsible for only approximately one-fifth of the entire damage suffered by plaintiff. If the court found that defendant was responsible for two-fifths of such damage, the court necessarily assessed the entire damage at $500. If he found, as he might have done, and as we are required in support of the judgment rendered to presume he did, that defendant was responsible for only one-fifth of plaintiff's damage, he necessarily assessed such entire damage at $1,-000. Because the testimony introduced does not show the decrease in value of plaintiff's lands by reason of the destruction of said springs and inconvenience resulting from rendering his crossing impassable, as distinguished from the other elements of damage claimed, we cannot say that the finding of the court as to the amount of damage suffered is without sufficient support in the evidence.

The judgment of the trial court is affirmed.